NOT FOR PUBLICATION (Docket Entry No. 11)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| DINO J. BERARDI, JR., Plaintiff, | Civil No. 03-5864 (RBK) |
| v. | **OPINION** |
| DELAWARE RIVER PORT AUTHORITY, Defendant. | |

**KUGLER**, United States District Judge:

In this civil action, plaintiff Dino J. Berardi, Jr. brings claims against his former employer, defendant Delaware River Port Authority ("Port Authority" or "DRPA"), under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act"). Berardi's verified complaint alleges that he was absent from work without authorization on July 13, 2002 due to major depressive (bipolar) disorder, that his depression constitutes a "disability" under the relevant statutes, and that the Port Authority terminated his employment solely because of that unauthorized absence. Berardi argues that the Port Authority thereby discriminated against him because of his disability in violation of the ADA, 42 U.S.C. § 12112, and

the Rehabilitation Act, 29 U.S.C. § 794(a).

This matter comes before the Court upon the Port Authority's motion for summary judgment. Because this Court concludes that Berardi was not "disabled" as defined by the ADA and the Rehabilitation Act, summary judgment will be granted in favor of the Port Authority.

## I. BACKGROUND FACTS

Berardi was employed as a police officer with the Port Authority Bureau of Public Safety's Police Department from January 1991 until September 13, 2002. While thus employed, Berardi received several official commendations and awards, including "Police Officer of the Month" in March 1995. He was promoted to Sergeant of Police in January 2001 and originally assigned to the Walt Whitman Bridge. Berardi was transferred to the Benjamin Franklin Bridge in May 2002.

Berardi, who was diagnosed with Type II diabetes around the time he began working for the Port Authority in 1991, began to feel depressed in late 2001. He missed work on multiple occasions throughout 2002 without notifying a supervisor that he would be absent. These absences violated Rules 26 and 48 of the Port Authority's Police Department Rules.

In response to absences that occurred during January, February, and April, the Port Authority held a "pre-disciplinary

hearing" with Berardi on April 15, 2002. At that hearing, Berardi revealed that he felt "depressed" and that he had some "personal problems." Berardi received an eight-day suspension on April 18, 2002 for the unexcused absences.

After the suspension, Berardi had a private discussion with Police Chief Vincent Borrelli. Borrelli recalled that Berardi said he was having "personal problems," "felt depressed," and was "seeing someone" for his depression. In early June, 2002, Borrelli advised Lt. Albert DeColli that Berardi "did have a depression problem [and] that he was seeking some type of help and assistance."

The Port Authority held a second pre-disciplinary hearing with Berardi on July 8, 2002 for his further unexcused absences during June of that year. At that hearing, Berardi again spoke of his depression, telling the officials present that he felt as if he were "losing his mind." Following the hearing, Captain Richard Sullivan told Berardi that he too suffered from depression, and that there was "no shame" in obtaining professional help and/or taking medication to treat the condition.

On July 18, 2002, Berardi sought treatment with Bernard Stiefel, a licensed psychotherapist. Stiefel determined that Berardi needed a psychiatric evaluation, "as he may be bipolar and in need of medication therapy to stabilize his moods."

Stiefel referred Berardi to Dr. John Charles Ouligian, a psychiatrist.

Berardi received a fifteen-day suspension from the Port Authority on July 24, 2002 for his June absences. The Port Authority informed him at that time that a third pre-disciplinary hearing, in response to an unexcused absence of July 13, 2002, would be scheduled for early August.

On July 30, 2002, Berardi attended his first appointment with Dr. Ouligian. Dr. Ouligian diagnosed Berardi as suffering from “major depressive disorder,” prescribed him the anti-depressant Celexa, and told him to stay out of work for the next three weeks. Berardi gave Dr. Ouligian’s note placing him out of work to Brenda Greene, the Port Authority’s Disability Claims Administrator. At Berardi’s request, the Port Authority rescheduled his third pre-disciplinary hearing to September 11, 2002.

Berardi attended another appointment with Dr. Ouligian on September 9, 2002. Dr. Ouligian provided Berardi with a “Certificate of Health Care Provider,” along with a completed application to invoke the Family and Medical Leave Act (“FMLA”). In the certificate, Dr. Ouligian wrote that Berardi “has a major depressive disorder. Problems with concentration, labile [up and down] mood.” Dr. Ouligian noted that Berardi suffered from depression at that time, had been “incapacitated” by it for FMLA

purposes since July 30, 2002, and would remain incapacitated until September 30, 2002.

Berardi delivered the FMLA request to Greene on September 11, 2002. He advised Greene that he could not attend the pre-disciplinary hearing scheduled for that day, as Dr. Ouligian had advised him that he was "mentally and physically unable to do so."

The Port Authority held the third pre-disciplinary hearing without Berardi on September 11, 2002. Chief Executive Officer Paul Drayton, Jr. issued a decision at that hearing regarding Berardi's unexcused absence of July 13, 2002. Drayton reported the decision in a letter to Berardi dated September 13, 2002. The letter noted that because Berardi's FMLA request "appeared valid on its face," all unexcused absences Berardi had accumulated between July 30, 2002 and September 30, 2002 were "removed from disciplinary consideration" at the hearing. However, the letter provided, Berardi would be terminated due to his absence of July 13, 2002 "in conjunction with [his] disciplinary history related to prior 'no call/no-show' and abuse of sick leave incidents during year 2002."

Berardi testified at deposition that he has been able to work without restrictions since September 30, 2002.

## II. ANALYSIS

Summary judgment is only appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330.

The moving party must first satisfy a burden of production, which "requires the moving party to make a prima facie showing that it is entitled to summary judgment." Celotex, 477 U.S. at 331. Where the burden of persuasion at trial would be on the nonmoving party, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id.

If the moving party has not fully discharged its initial burden of production, its motion for summary judgment must be denied. Celotex, 477 U.S. at 332. If the moving party

satisfies its initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial" to avoid summary judgment in favor of the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).

Here, the Port Authority argues that it is entitled to summary judgment for two reasons. First, it argues that Berardi was not "disabled" as defined by the ADA and the Rehabilitation Act. Second, it argues that even if Berardi were "disabled" as defined by the relevant statutes, his termination was for a legitimate nondiscriminatory reason, viz., "repeated violations of DRPA's Policies, Procedures, and Work Rules." (Def.'s Br. Supp. Summ. J. at 27.)

"Whether suit is filed under the Rehabilitation Act or the [ADA], the substantive standards for determining liability are the same." McDonald v. Commonwealth of Pa., Dep't of Pub. Welfare, Polk Center, 62 F.3d 92, 95 (3d Cir. 1995). Analysis of a claim under either statute involves a three-step process.

First, in order for a plaintiff to make out a prima facie case of discrimination, he bears the burden of demonstrating that he (1) has a disability; (2) was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations; and (3) was nonetheless terminated. See Williams v. Phila. Hous. Auth. Police Dep't, 380

F.3d 751, 761 (3d Cir. 2004) (ADA); Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996) (Rehabilitation Act). Second, if the plaintiff makes out a prima facie case, the burden shifts to the defendant to provide a non-discriminatory explanation for the employment decision. See Walton v. Mental Health Ass’n of S.E. Pa., 168 F.3d 661, 668 (3d Cir. 1999). Third, if the defendant provides a non-discriminatory explanation, the burden shifts back to the plaintiff to "point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. (quoting Lawrence v. Nat'l Westminster Bank N.J., 98 F.3d 61, 66 (3d Cir. 1996)).

## A. PRIMA FACIE CASE

### 1. **Disability**

Under the ADA and the Rehabilitation Act, a “disability” is (a) a physical or mental impairment that substantially limits one or more major life activities, (b) a record of such an impairment, or (c) being regarded as having such an impairment. See 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(2). The Port Authority argues that it is entitled to summary judgment because the record before this Court is not such that a reasonable jury could find Berardi had a disability under

any of these three definitions.

**a. Physical or Mental Impairment that Substantially Limits One or More Major Life Activities**

"Merely having an impairment does not make one disabled . . . . Claimants also need to demonstrate that the impairment limits a major life activity." See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). An inability to work for a period of limited duration does not establish substantial limitation of a major life activity. See McDonald, 62 F.3d at 96. Further, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures . . . must be taken into account when judging whether that person is 'substantially limited' in a major life activity . . . ." See Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999).

In its brief, the Port Authority points to evidence (in the form of Berardi's own deposition testimony) that Berardi's ability to work is unimpaired when his depression is treated. See Def.'s Br. at 31. The Port Authority also notes that the record contains no evidence that Berardi "suffered any limitations with regard to any other activities of daily living." See id. at 29. In response, Berardi points to evidence that, before treatment, he was severely impaired. See Pl.'s Opp. Br. at 29. However, under Sutton, this Court is required to consider

Berardi's post-treatment condition in determining whether Berardi is substantially limited in a major life activity. Because the record establishes that Berardi has been able to work without restriction after receiving treatment for depression, and because the record contains no evidence that Berardi's depression and diabetes affected any of his major life activites other than work, a reasonable jury could not find that Berardi is substantially limited in a major life activity.

**b. Record of Impairment**

Because the record shows that Berardi has been able to work without restriction after receiving treatment, and because the record contains no evidence that Berardi's depression and diabetes affected any of his major life activities other than work, a reasonable jury could not find that Berardi has a record of substantial limitation in a major life activity. See Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 953 (3d Cir. 1996) (holding that because evidence established plaintiff was not substantially limited in a major life activity, plaintiff could not establish that he had a history of being disabled).

**c. Regarded as Having a Disability**

An analysis of this claim "focuses not on [Berardi] and his actual abilities, but rather on the reactions and perceptions of the persons interacting or working with him." See Kelly v. Drexel Univ., 94 F.3d 102, 108-09 (3d Cir. 1996). Thus, the

relevant issue here is whether the people working and interacting with Berardi viewed him as being substantially limited in one or more major life activities.

Berardi argues that his co-workers at the Port Authority knew that he suffered from depression and diabetes. See Pl.'s Opp. Br. at 35. However, "the mere fact that an employer is aware of an employee's impairment is insufficient to establish . . . that the employer regarded the employee as disabled . . . ." See Kelly, 94 F.3d at 109. Because the record establishes only that Berardi's co-workers were aware of his depression and diabetes, and not that they viewed him as being substantially limited in one or more major life activities, a reasonable jury could not find that anyone at the Port Authority viewed Berardi as disabled.

**B. REMAINING ELEMENTS**

Because Berardi has not raised a genuine issue as to whether he was "disabled" under the relevant statutes, this Court need not reach the other elements of a prima facie case of discrimination, the remainder of the burden-shifting analysis under the ADA and Rehabilitation Act, or the Port Authority's suggestion that Berardi's opposition to its motion should be disregarded as untimely.

## III. CONCLUSION

Because a reasonable jury could not find, based on the record before this Court, that Berardi has a “disability,” the Port Authority’s motion for summary judgment will be granted. The accompanying Order shall issue today.

Dated: June 7, 2005 /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge